Good morning. May it please the Court. My name is Jeffrey Martins, and I represent the petitioner, Ms. Rajinder Kaur. I would like to reserve two minutes of my time. Kaur filed an application for asylum on January 23, 1998, and it has remained pending ever since. During this time, there was previous litigation at the Ninth Circuit when it was determined that she had established past persecution. And this is an important determination because it provides her with a regulatory presumption of a well-founded fear and shifts the burden of proof to the government to prove that there has been a fundamental change in country conditions, and the government here has failed to do so. The Board's decision is flawed for several reasons, but most critically is the misrepresentation of some of the substance of the reports that are used to claim that conditions in India have changed. And the most clear example of that is when the judge cites and the Board approves that, quote, the list of wanted has been winnowed down to high-profile individuals. The actual quote states, several say, however, that the list of wanted militants has been winnowed down to high-profile individuals. By contrast, other pre-trial experts ---- The quote has different experts saying different things on different sides. What the judge did was she only took, and the Board approved of this, one section that supported the government, recognizing that the actual information supports both sides and that the conditions are really mixed in India. In fact, the same report also has additional reports that evidence suggests that police continue to commit abuses in India, including wrongly placing individuals involved in ordinary political activities on chronic offenders' lists and manipulating those lists to include politically inconvenient persons. They will also arrest and pursue wanted suspects, including someone that has been arrested before. So information, the evidence, and the record really is one of mixed conditions at best. The Board based its decision on really three factors in determining that conditions have changed. The first is that there has been a lengthy passage of time. An executive previously held that improper consideration for changed country conditions because ---- Especially where there's been delay on the part of the government in processing the asylum application, and that's what happened here. That's definitely what happened here, Your Honor, although I think the evidence in the record still shows that the conditions have been mixed. And, of course, even though there's been a passage of time, that doesn't mean that conditions have changed. A threatening condition can continue to exist for long periods of time, even though many years have passed. The other one, the one circumstance that the Board relied on was the fact that I believe her husband is still in the Punjab, right? Yes, that is definitely one factor. What do we do with that? Well, you know, I think although that was relied upon by the Board to say that conditions have changed, in fact, there was no change at all regarding the circumstances of her husband. The only evidence in the record is that her husband was arrested, beaten and tortured and then went into hiding. There's been no change in that circumstance since Ms. Kaur's application for asylum has been filed. And I think that the Board's position that that somehow reflects safety for Ms. Kaur is really just based on speculation because there is no information that there has been any kind of change. The preponderance of evidence here is that there's been no change in the husband's circumstance, not that there's been a fundamental change. Another factor that the Board also relied on was that there are categories of individuals who are at risk in India. And, in fact, the Board didn't cite the record at all in this determination. The Board only cited the immigration judge, and the judge cited the Immigration Service Report that has experts saying one thing on one hand and experts saying something else on the other hand. And I think that, again, is no basis for finding that a preponderance of evidence is to establish a fundamental change. So what are you asking us to do? What's the relief that you want from Ms. Kaur? Well, I'd like the – for Ms. Kaur, we'd like the panel to find that the government has failed to rebut the presumption of a well-founded fear. This is not a Ventura remand because the Board has made that determination. So the Court can make a finding of that. So you're asking – so you'd be asking for a remand? For the entry of disenfranchisement. For the – with directions to the Board to exercise. It still has the ultimate discretion to grant asylum and see the holding of removal, but they have no discretion. Right. Right? I mean, is this the – I can't remember. All these cases seem to blend together at one point. Was there a claim here for asylum, hardship – what's it called, Hyde? Hardship asylum? It's frequently referred to as humanitarian asylum where somebody is granted asylum even though there's a lack of a well-founded fear. And that's true. And I think that also merits – Wouldn't that be – that issue, if we were to grant the relief you're asking for, that would be kind of moot, wouldn't it? Yes, Your Honor. Yes. We wouldn't have to deal with it. That's true, Your Honor. If the panel finds that the government has not rebutted the presumption of a well-founded fear through changed conditions, then that is not a necessary determination to make. I also – Ms. Corr also complained about her due process rights being violated by the judge's use of Immigration Service reports to say that the Immigration Service has proved that the conditions have changed in India. I also see on this point that we're able to find that there's not substantial evidence to support the Board's decision. Can we receive some correspondence from you? Yes, Your Honor. Ms. Corr's son goes to the system, and she has a pending visa petition that needs to be filed. The last status of that is that I informed the Court on Monday that the matter was a motion to reopen pending at the Board of Immigration Appeals. Until the Board or the Office of Chief Counsel for the Immigration Service joins in that motion to reopen, though, I think the jurisdiction still remains with the Ninth Circuit. Yes, it does. I was just curious if – Now, there's been no other developments, though, regarding that issue. So I say I have – Let me ask you this. I mean, the object here is to – I gather your object here is to adjust her status Yes, Your Honor. That is a preference. Would our mediation service be of any assistance? You know, I think – I'll have to ask the government. I'll have to ask the government that question as well. There's certainly potential for that. But, again, it's up to the Office of Chief Counsel for the Immigration Service whether or not to join in the motion to reopen because it's beyond the 90-day limit that is normally statutorily required for that to be granted. If the mediation service could include the Office of Chief Counsel as well as the facility. I'll ask the government in a minute. It's possible that something like that could be useful. I can save the remainder of your time for rebuttal. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. My name is Jeffrey Bernstein. I represent the Attorney General of the United States. Do you want to talk about mediation first? Well, we can. She comes – she's before us in a kind of a unique position. She does. I mean – Past procedure and she's – her son now has been petitioned for her. There's some equities in her favor. Wouldn't that be the kind of case that the government might want to join in? Well, I guess we're mixing up the merits of the asylum case with – Noting what her position is, that's all. Well, I guess the fact of the matter is that, as counsel indicated, the motion to reopen is untimely, so she's got to meet quite a burden with respect to an untimely motion to reopen. You know, but if you guys were to join in a – the Board might sui sponte? Well, yeah. Well, no question about it, Your Honor. If the Department of Homeland Security – and it's their call, and I spoke to them and they still haven't made up their mind – but if the Department of Homeland Security joins in on the motion to reopen, then it will – the Board – and I'm certainly not going to predict what's going to happen, but the Board generally speedily determines and grants those motions. When might we expect to hear from the Department of Homeland Security on this issue? They're still making up their mind, Your Honor. I don't work for the Department of Homeland Security, so I don't know. All I can do is talk to them. But I'm happy to keep the Court apprised. But until such time as they join in, my suggestion would be that the Court just continue to continue considering the merits of the case. So let me just put it to you this way. Do you think our deviation unit might be able to prod them along and sort of help the process? I don't know. My guess is it's possible, but they – the Department of Homeland Security makes their determinations based upon what their investigation into the merits of the applications, and I'm not so sure that they can be prodded. But as I say, I'll do my best to keep a tab on that decision and keep the Court apprised, no question about that. I pledge you the – I realize you're a litigation counsel, but, you know, sometimes if you call a few – if you call a few agency and say, hey, this looks like a case you might want to join in, they might – I understand, Your Honor. Anything's possible. I'm just not in the position to make predictions with respect to what they're going to do. So if I may proceed to the merits. Yes. The issue before the Court is whether or not there is any evidence compelling conclusion opposite to the administrative adjudicator's conclusion that 51 percent preponderance of the evidence of record was sufficient to rebut the presumption created by this Court's determination that Ms. Carr was persecuted in the past in India on account of a protected factor. The simple answer is no. There is no evidence compelling a contrary conclusion. Do you have any evidence that her husband is just hiding in India, or do you have any evidence that proves that he's a little controversial, that he's been hiding the entire time? We have no evidence that he's been – that he's not been in hiding, Your Honor. However, as the country conditions report indicate, if the Sikh police, the Indian authorities want somebody, they've got many resources to go after them. Here, there is no evidence that anybody has asked, as the immigration judge indicated, no evidence that anybody has asked after him since, I believe, September of 1996. There's no indication that they're actively searching for him. The only evidence we have is that he's been in India for now the past 15 years and that he has – no harm has come to him. If you're going, don't worry. You're absolutely right. But I'm not the Indian police. As I recall, in this – in the prior proceeding, she was deemed credible, correct? No, she was deemed incredible. This Court reversed the adverse credibility determination. We said she was credible. You said that – I don't want to quibble with you, Your Honor, but the finding of the court was that the immigration judge erred in rendering adverse credibility. Cut it whatever you want. The result of the prior proceeding before this Court, her testimony is deemed credible. Even if deemed credible, the only thing she's testified to is that he is in hiding. That's exactly the point. She testified. Her testimony, she's deemed credible. We take her testimony as true. She testified that he was in hiding. The court reversed the adverse credibility determination. It went back down at the second hearing, when the board sent it back down for all this business on changed country conditions. Both sides said we have no further evidence. That's right. I – there's no question. As I advised, Your Honor, we don't have any evidence that he's not in hiding. But I'll just stand on my former answer, that the fact that no one has come looking for him, that he is – there's no evidence that he isn't safe, supports the administrative adjudicator's determination that rebuttal was established. But rebuttal is established essentially based upon the determination – based upon the country conditions report, which the immigration judge and the board concentrated upon. And that report has to be considered in coordination with the testimony of the petitioner regarding why and what mistreatment they underwent. And she testified that he – her husband was mistreated because after a number of years of not complying with police policy regarding apprehending Sikh youth in false cases, they all of a sudden decided to bring him in and talk about that and beat him very, very severely. No question about that. And during the beating, apparently, they made – from observation or not, they indicated to him that he should not support Khalistan. She – her position is that she's his wife, and they brought her in as a hostage. And obviously, the board thinks of her as well. But there were never any accusations that he was a militant, no accusations that he aided the militants, no accusations that he undertook political activity in support of a militant. And it's important to understand what the country conditions report defines militants as. A militant is an individual during that 10-year horrible period in India where the Indian government was attempting and successfully purged the Punjab of the militant movement. But a militant is somebody who attempts to achieve an independent state they call Khalistan through violent means. We're spending – I'm sorry. We're spending all this time on the facts, but we've got a situation here where it's credible or it was – or I should say it was credible to say it was raped by three government police officers. Why doesn't that bring in a presumption that that's a rebuttal? It does, and that's why we're here. The question is whether or not there's substantial evidence supporting the determination that their presumption was rebutted. And again – How was that rebutted? It's rebutted by the evidence that I'm talking about. By three police officers? It's rebutted by the evidence I'm talking about, Your Honor. The evidence that the court – that the board and the immigration judge relied upon establishes that the Indian government goes after militants, those who supported the militants, those who – Is that qualified in any way in the country report? Well, the only qualification, Your Honor, is that some experts of the experts quoted in that report say that there's only a few high-profile suspects which the Indian police are after. Some experts say that that category is larger. But the unifying thread is that all opinions indicate they go after militants. That is, individuals who advocated the establishment of Talestan through violence. Excuse me. They were both supporters of Talestan and had been defiant in participating in human rights violations, so there's pretty good indication that they were – Well, the only evidence we have, Your Honor, is the Respondent's testimony on that issue. She said herself she was apolitical. She never voted, although she supported Sikhs and supported Talestan. And she only indicated with respect to her husband that he might have had some support for Talestan. There's no indication that any of them supported the violent militants that engaged in violent activity. None whatsoever. Well, it doesn't have to be violent activities. If they were supporting Talestan and the government was very much opposed to that, Well, there's no evidence that establishes that rogue policemen are sought after for persecution by the Sikh authorities. What that country report that I'm discussing speaks about is the fact that there is no evidence that they go after militants, essentially militants. Now the evidence that she was a militant? There is no evidence. She certainly didn't testify that she was a militant. She didn't testify that anybody in the Indian government believed she was. Does the country report even speak to the issue with respect to Ms. Cowher and her husband? No, but if you're talking about the government's burden to show rebuttal on an individualized basis, they certainly have. They said they examined her testimony with respect to her husband's, and her husband is the reason they went after her, with respect to her husband's activities, with respect to her activities, and said the country reports establish that they go after high-profile militants or perhaps some subset of high-profile militants. She's not in that group. They also said, well ---- It also said something about women in particular being victims. Yes, but that's women in custody. I mean, not all women in India are entitled to asylum simply because they're women. But they are if they've been raped by the Punjab police, correct? No, they are if they're in custody. She was raped in custody. The country reports indicate that if a woman is taken into custody, there is a chance that she will be raped. There is an endemic problem with rape in India. Amongst family members, amongst the Indian government addressing that effectively? There's nothing in the country reports ---- Goes on? There's no country ---- nothing in the country reports that indicates so. But, Your Honor, there is no argument from the other side or anyone that simply because one is a woman, one is entitled to asylum, because you have to establish that persecution is on account of a protected basis. A nexus. Right. Exactly. All right. Okay. And if I may just ---- I understand. If I may just ---- Yes. Make your last point. Make one comment. And that is the Board's determination is certainly buttressed by the fact that the husband remains in India, hasn't been looked for, hasn't been bothered. And, in fact, although the Administrator ---- But the problem with that is the government didn't present ---- the government's burden to present evidence on that, not her. Well, that's true. But they were ---- the adjudicators were entitled to take the case in context. And the context in which the case presented was the fact that no evidence had been presented, that he had been bothered in 10, now 15 years. How do you know that no one has sought him? That ---- because no evidence has been presented, and the Board and the immigration judge certainly ---- Don't have any evidence of it. No, but there's a reasonable inference to be drawn. And that inference was drawn, and there's no evidence which compels a contrary inference. And I might add that the ---- Well, except that it's in hiding. That's correct, Your Honor. I might add, as my final point, and I ---- Well, if it's in hiding, then that's a big argument on your side. I don't think that he's there and not disturbed. If it's in hiding, he can't be disturbed. I guess the point is there's no evidence that anybody attempted to find him in hiding, and there is evidence that the police have resources to track down people. I just want to add that the father who had custody of the children did an affidavit, and there's no evidence that the police went after him to determine where anybody was.        Thank you. Thank you. Thank you, Your Honor. Thank you, Your Honor. We ---- Thank you, Your Honor. I appreciate it. You've been very generous with your time. I appreciate it, Your Honor. Thank you very much. We've got two minutes in rebuttal. I'll be very brief. First of all, no evidence does not establish a preponderance of the evidence that there's been a fundamental change in circumstances, and that's what the government is required to show in order to rebut the presumption of a well-founded fear. The government's position, I think, really comes down to that the presumption has been rebutted by some reports of less violence or mixed reports of violence, and the Ninth Circuit has already held, and I think this case is no different than Kataria v. INS, which is 232 F30-1107, where the court held that a simple reduction in killings or violence is not sufficient to rebut the presumption. It's no different than Taurabac v. INS, 182 F30-1114, Ninth Circuit, where the court held that mixed reports are also insufficient to rebut the presumption. And aside from the motion to reopen that is pending in this case, I'm reminded it would also allow this Court to pursue her adjustment of status. We understand that. Thank you very much, Your Honor. Thank you. Thank you. Thank you, counsel. We appreciate your arguments, and we will give some thought to the issue of perhaps referring this over to our mediation unit. If we do, you'll hear from us. Thank you.
judges: Watson, Hug, Paez